THOMAS J. AND DIANE E. FLAUTT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Flautt v. Commissioner
Docket No. 9283-81.
United States Tax Court
T.C. Memo 1983-172; 1983 Tax Ct. Memo LEXIS 617; 45 T.C.M. (CCH) 1122; T.C.M. (RIA) 83172; March 30, 1983. Thomas J. Flautt, pro se. Nancy B. Herbert, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION "KORNER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year 1978 in the amount of $873. After concessions, the sole issue which we must decide is whether petitioners were entitled *618 to a dependency exemption for the year 1978 for petitioner Thomas J. Flautt's son David, pursuant to the provisions of sections 151 and 152. [1] Some of the facts were stipulated, and such stipulation, together with accompanying exhibits, is incorporated herein by this reference. FINDINGS OF FACT Petitioners, husband and wife, resided in Cincinnati, Ohio, at the time the petition in this case was filed. For the calendar year 1978, petitioners filed a joint Federal income tax return with respondent's service center at Covington, Kentucky. Thomas J. Flautt (hereinafter "petitioner") [2] was formerly married to Winifred B. Flautt (now Kessler) (hereinafter "Winifred"). They were divorced in 1972. Two children were born of this marriage, Madeleine Flautt and David Flautt. In the divorce, the custody of these two children was granted to Winifred. During the taxable year 1978, the principal place of residence of David Flautt was in the home of Winifred. *619 In connection with, but prior to their divorce, petitioner and Winifred entered into a lengthy and detailed separation agreement which provided, inter alia, for payments by petitioner for the maintenance and support of his children Madeleine and David. On this subject, the separation agreement, which was executed by the parties on July 10, 1972, provided that: (a) Petitioner would pay Winifred $150 per month for the general support of each child, until each such child should reach the age of 21, be married or otherwise be emancipated, whichever should first occur, with further provision for reduction of such support payments during the time a particular child was in school. (b) Petitioner was to pay the sum of $150 per month until January 1, 1975, into a trust fund for the purpose of providing education money for the two children. Beginning January 1, 1975, such monthly payments were to increase to $200 per month, and were to continue until August 1, 1985. (c) To the extent that the above trust fund proved to be *620 insufficient to cover the education expenses of a child, petitioner agreed to pay such additional amount as was required for that purpose. For purposes of this provision, "education expenses" were defined to include tuition, room, board, books, fees (directly related to education) and transportation to and from any college or school mutually agreed upon by petitioner, Winifred and the child involved. The parties further agreed, in the separation agreement, that petitioner would be entitled to claim the two children as dependents in his income tax returns thereafter filed, * * * provided that the husband is not in default in the particular tax year in making the payments or performing the other obligations hereinbefore required to be made by him to or for the benefit of the two children thus claimed as dependents. The separation agreement provided for the adoption and/or incorporation of the agreement into any later divorce decree, and further acknowledged the right and power of any court having jurisdiction in the premises to modify the provisions of the agreement according to law. With this proviso, however, the separation agreement provided: No modification or waiver *621 of any of the terms of this agreement shall be valid unless in writing and executed with the same formality as this agreement, subject always to the orders of any court having jurisdiction. The separation agreement was executed by petitioner and Winifred, each in the presence of two witnesses, and their respective executions were acknowledged before a notary public. Petitioner and Winifred were divorced in 1972, subsequent to the execution of the separation agreement. Beginning in 1975, petitioner began to fall behind in his required payments to the educational trust fund for his children. Of a required total of $2,400 for the year 1975 ($200 per month), petitioner paid only $1,000. He made no direct payments to the educational trust fund for his children thereafter. Beginning in 1976, and extending into 1977, petitioner made a series of payments to or for the benefit of his daughter Madeleine for such items as travel expenses to schools, tuition and the like, apparently in accordance with the third branch of his requirements under the separation agreement, as outlined above. The record does not disclose that any such additional payments were made to or for the benefit *622 of his son David. In late August, 1977, petitioner opened negotiations through his attorney with Winifred and her attorney regarding a modification of the separation agreement with regard to his required payments for the support and education of his children. At some point in the fall of 1977, a formal agreement amending the original separation agreement of 1972 was prepared by Winifred's counsel and was submitted to petitioner, but was never executed by the parties. Negotiations apparently continued into the summer of 1978. Under date of August 16, 1978, petitioner's attorney sent a letter to Winifred, in which he purported to summarize the results of a conference which had occurred in his office on July 25, 1978, between Winifred and petitioner. He recited that petitioner agreed to changing the trust fund account, established under the terms of the original separation agreement, so that its entire existing balance of $5,700 would thereafter be held exclusively by Winifred as custodian for the benefit of David. The letter also recited that petitioner was maintaining certain life insurance policies for the exclusive benefit of Madeleine and David, under a trust agreement *623 with a bank. The letter further recited that, because of additional large and unexpected expense in connection with the education of Madeleine, petitioner was unable to continue his scheduled monthly payments into the educational trust fund called for by the separation agreement, but that petitioner acknowledged his obligation and willingness to provide a college education for his son David at the appropriate time. The letter recited that neither party waived any rights under the original separation agreement, and made further comment about petitioner's visitation rights under said agreement. The record does not disclose the response, if any, of Winifred to the matters stated in this letter, and there is no evidence that petitioner and Winifred entered into any formal written agreement amending the separation agreement of 1972. Petitioner claimed his children Madeleine and David as dependents for purposes of the allowable exemptions under sections 151 and 152 for the year 1978. Upon audit of the 1978 return, respondent disallowed the claimed dependency exemption for David, on the ground that petitioner was not entitled to such exemption since he was in default under the separation *624 agreement with respect to David in that year. OPINION Petitioner contends that in the year 1978, he and his former wife Winifred agreed upon a modification and amendment of their separation agreement of 1972, and that the parties agreed that petitioner was not in default with respect to any required payments through the year 1977, and that petitioner was relieved from making any further contributions to the educational trust fund for his children, beginning with the year 1978. In support of this position, petitioner points to the sizable payments which he made for the benefit of Madeleine, outside the educational trust fund, in the years 1976 and 1977, [3] and the alleged agreement between himself and Winifred, as summarized in his attorney's letter to Winifred in August of 1978. The statutory provision which is pertinent here is section 152(e)(2), which provides a (2) Special Rule.--The child of parents in paragraph (1) [i.e., divorced parents, etc.] shall be treated as having received over half of his support during the calendar year from the parent not having custody if *625 -- (A)(i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any such deduction allowable under section 151 for such child, and (ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, * * *. There is no dispute that David is petitioner's child within the meaning of section 151(e), and the parties are in agreement that petitioner provided more than $600 for the support of David in the year 1978. Also, the separation agreement clearly provided that petitioner was to be entitled to the annual dependency exemption for his two children only for so long as he was not in default with respect to his obligations under said agreement. Accordingly, the sole issue is whether petitioner has established his right to claim David (not being in his custody) as his dependent in 1978 solely by reason of the above-quoted subsection of the Code and the alleged agreement between petitioner and Winifred, it being conceded that petitioner did not in fact provide over half *626 of David's support in that year. The burden of proof with respect to this issue is upon petitioner, ; Rule 142(a). Upon this record, we must hold that petitioner has failed to carry his necessary burden of proof. It is clear from the facts that petitioner stopped making any contributions to the educational trust fund for his children in 1975, and that he made no such contributions in 1978, the year before us. He was clearly in default under the separation agreement. In order to prevail, he had to establish that he and Winifred had amended the original separation agreement so as to wipe out his prior defaults and also to relieve him of the obligation to make contributions to the educational trust fund in 1978. This he failed to do. The letter from his counsel to Winifred in 1978, which petitioner claims set forth the terms of the amendment to the separation agreement, is nothing more than a recital of what petitioner had done, was willing to do and was unwilling to do. There is no evidence from the letter itself, or from any other source, that Winifred agreed to these new terms, as petitioner claims. The obvious and *627 best way to have proved Winifred's agreement was to have produced her, or her counsel, or petitioner's then counsel, as witnesses at the trial of this case, but petitioner failed to do so. Such failure is unexplained and we are therefore entitled to assume that such witnesses, if called, would not have corroborated petitioner's testimony that he and Winifred had entered into the alleged modification of the separation agreement. See ; , affd. . There is still another reason in this case why petitioner must fail. Even if we were to agree that a written separation agreement may be amended, for purposes of section 152(e)(2)(A), by a letter from the attorney for one party to the other party, summarizing the terms of the amendment, where the record shows that the parties were aware of such terms and carried them out, see , and even assuming arguendo that the letter of petitioner's attorney in the instant case clearly showed the terms of such *628 amendment and the agreement of Winifred thereto, petitioner is still faced with the clear requirement of the original separation agreement that all amendments thereto had to be executed with the same formality as the original agreement itself; that is, any amendment had to be in writing, had to be signed by both parties in the presence of witnesses, and had to be acknowledged before a notary public. The letter of petitioner's attorney, upon which he relies herein, was signed by the attorney only, and does not come close to satisfying this requirement.Neither petitioner nor the Court can overlook the clear provisions of the separation agreement, and even if petitioner had fully satisfied all the other requirements of his burden of proof in the present case, which he has not done, he must still fail on this point. We accordingly hold for respondent. Decision will be entered under Rule 155.
Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Rules of Practice and Procedure of this Court, unless otherwise noted.↩
2. Petitioner Diane E. Flautt is involved herein only by reason of having filed a joint return with her husband, and will not be referred to further herein.↩
3. No payments were made for the education of David, either to the trust fund or outside it.↩